IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCY GWIN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. 09-527 |
| | ) |
| KYRK A. PYROS, RONALD | ) |
| DEVERSE, THE GEORGE | ) |
| WASHINGTON, LP, PYRSQUARED | ) |
| GROUP, INC., and PYRSQUARED | ) |
| MANAGEMENT CO., INC. | ) |
| | ) |
| Defendants. | ) |

## FIRST ORDER ON MOTIONS IN LIMINE

Defendants have filed numerous motions in limine. In this Order we will address Defendants' Motion in Limine to Preclude Testimony of Ed Cook Pursuant to Federal Rules of Evidence 602 and 403 (ECF No. 95) and Defendants' Motion in Limine to Preclude Testimony or Evidence Regarding Alleged Attempts to Poison Robert Milan's Dog (ECF No. 102). For the reasons explained below we will deny both motions.

### Testimony of Ed Cook

Defendants seek to preclude testimony of Ed Cook that he heard Defendant Kyrk Pyros make disparaging remarks about tenants of the George Washington Hotel. Defendants argue that the testimony should be excluded under Federal Rule of Evidence 602 because there is no evidence "sufficient to support a finding that the witness has personal knowledge of the matter." Additionally, Defendants argue that the evidence is unfairly prejudicial under Rule 403.

We disagree. Mr. Cook testified that while walking through the lobby of the George Washington Hotel he overheard "somebody hollering saying that they wanted drunks out the building." Cook Dep. 6. Mr. Cook further testified that he "didn't know exactly who it was until I got around the corner, then I saw [Kyrk Pyros]." Id. After Mr. Cook identified the speaker as Mr. Pyros he testified that Mr. Pyros "was saying that he wanted drunks and faggots and cripples out of the building before the end of the month." Id. He described the event later as follows:

> As I left the bar and started walking through the lobby, that's when I overheard him – because he was loud. I couldn't help I heard him. And I heard him. When I got around the corner, we saw – we saw each other, you know, and I realized who it was.

Id. at 7. Even later during his deposition, in response to counsel's supposition that Mr. Cook did not really know what the conversation was about, Mr. Cook explained as follows:

> What the conversation was about? He wanted all the tenants – he wanted those tenants out of the building by the end of the month that – he said that. He said that. It don't take a rocket scientist to know that he's talking about the building, and it don't take a rocket scientists to know that he owns the building that he said something like that. I knew who it was. I knew who it was.

Id. at 41.

He further testified that the only people in the lobby were Mr. Pyros, a security guard, and Mr. Cook. Id. at 8. He testified that Mr. Pyros was speaking to the security guard and that the security guard did not respond to Mr. Pyros' comments. Id. Mr. Cook testified that he did not hear the beginning of the conversation. Id. at 40. He "seriously doubted" that Mr. Pyros was repeating something someone else said. Id. At 42, 43..

2

This testimony is sufficient to support a finding that Mr. Cook has personal knowledge of the matter pursuant to Rule 602. The event was limited both in time and location. Mr. Cook is a former tenant who is able to identify Mr. Pyros. Mr. Cook's testimony describes the common experience of hearing unseen people in conversation followed shortly by seeing the people continuing in conversation. The testimony suggests that while walking through the lobby Mr. Cook heard a voice. As he continued walking he came upon Mr. Pyros and the security guard and saw Mr. Pyros speaking, while the security guard never spoke. Mr. Cook's testimony further suggests that Mr. Pyros' voice was identical to the voice Mr. Cook heard immediately prior to identifying Mr. Pyros.

In addition, Mr. Cook's testimony was unequivocal. He had no doubt that it was Mr. Pyros who was speaking and he had no doubt as to what he heard. This is distinguishable from the case relied upon by Defendants, Moore v. Univ. of Pittsburgh, 2005 U.S. Dist. LEXIS 46338 (W.D. Pa. Mar. 11, 2005). In Moore, the Court excluded testimony offered by the plaintiff herself "concerning a *stray remark* about pregnant women allegedly made by Dr. Robert Moore." 2005 U.S. Dist. LEXIS 46338, *20 (emphasis added). The Court cited the plaintiff's less-than-certain identification testimony ("I think that person could have been Dr. Moore, Dr. Robert Moore") as evidence that the plaintiff was "unable to definitively testify that it was in fact Dr. Moore who made the remark." Id. The Court also noted that the plaintiff was also "unable to testify that she heard the whole statement (*i.e.*, "I overheard the tail end of it. I didn't hear the beginning part. . . .")." Id. As is evident from Mr. Cook's

deposition testimony he is definitively able to identify Mr. Pyros as the speaker. Moreover, rather than being stray remarks, the statements made bear directly on the issue of Defendants' alleged discriminatory animus.

We therefore disagree with Defendants that Mr. Cook lacks sufficient personal knowledge as to the issue on which his testimony would be offered. We note that Defendants concerns about the testimony are issues that go to the weight of the evidence and the credibility of the witness. Defendants are free to elicit testimony that Mr. Cook did not hear the beginning of the conversation, that he did not know if Mr. Pyros was quoting someone else, and that he did not know the subject matter of the conversation. Defendants can then elicit corroborating testimony from Mr. Pyros and the security guard as to the substance of the conversation and whether Mr. Pyros was quoting someone else. It is the jury's duty to judge the credibility of the witnesses and determine the facts.

Defendants argue that if the testimony is admitted it will result in unfair prejudice under Rule 403 because the testimony is uncertain and lacks probative value. This argument is a reiteration of the same points made by Defendants when arguing that Mr. Cook lacks sufficient personal knowledge to testify. See Defs. Br. Supp. 5 ("Based on the arguments above, it is clear that the statement has little, if any, probative value, . . . "); id. ("probative value of this evidence is minimal, given the lack of certainty as to the speaker and the lack of context."); id. ("testimony is not based upon any concrete facts that demonstrate who made the statement and in what context.") id. 6 (admitting Mr. Cook's testimony "would provide the fact-finder no background information in which to assess the statement and would permit

4

speculation as to the statement's meaning and intent."); and id. ("factual support for [the testimony] is [] tenuous."). As already stated we find the testimony to be highly probative and that it does not lack certainty. We find that there is no danger of unfair prejudice from admitting this testimony. Once again, Defendants may elicit testimony on direct and cross-examination to clarify for the jury "the statement's meaning and intent" and "who made the statement and in what context."

<u>Alleged Attempts to Poison Robert Milan's Dog</u>

Defendants seek to preclude evidence expected to be introduced by Plaintiff through the testimony of Robert Milan and Melvin Terrell concerning Kyrk Pyros alleged instructions to poison Mr. Milan's dog.

Although Defendants argue that the evidence in this case should be narrowly tied to Plaintiff' claim, it is clear to the court that the relevant and admissible evidence in this case concerns a series of interrelated events that began in late 2007 or early January 2008. In other words, the expected evidence does not consist of a series of distinct, isolated, unrelated events, but rather it consists of a continuous, ongoing series of related events. The relevant course of events began just before Robert Milan's arrival at the George Washington Hotel with his dog. Plaintiff's present lawsuit primarily arises out of Defendants' conduct in reaction to the presence of Mr. Milan and his dog. Defendants' conduct includes their conduct in reaction to alleged retaliatory action taken against those who supported Mr. Milan. In large part, Plaintiff brought this action because she alleges Defendants targeted her for retaliation because she supported Mr. Milan. The fact that Defendants defense is that they had a valid nondiscriminatory reasons for their conduct towards Plaintiff does not disallow

5

Plaintiff the opportunity to argue to the jury that such conduct was a pretext by presenting evidence that Defendants harbored a discriminatory animus towards disabled tenants and their supporters. We therefore find that the evidence sought to be excluded is relevant and probative.

Defendants also argue that the probative value of the testimony is substantially outweighed by the potential for undue delay. Defendants submit that in order to rebut testimony regarding their alleged conduct towards Mr. Milan's dog will involve a "trial within a trial." Def. Br. in Support, ECF No. 114, 15. Defendants imply that the introduction of this testimony will require Defendants to engage in a full blown trial on the merits of Mr. Milan's prior lawsuit. We disagree.

The expected testimony is that Mr. Pyros attempted to have Mr. Milan's dog poisoned. Defendants have many avenues available to rebut this testimony that do not require delving deep into the merits of Mr. Milan's lawsuit. The expected testimony is narrow and offered to prove a discriminatory animus on the part of Defendants. Presumably Defendants deny that any of them were involved in attempts to poison Mr. Milan's dog. Thus, it is likely that Defendants' rebuttal will be focused on impeachment of Plaintiff's witnesses, a potential lack of corroborating evidence, potential inconsistencies in the evidence, alternative explanations, and denials from Defendants, among other things. Evidence regarding Mr. Milan's prior lawsuit will necessarily be introduced to the extent it assists the jury in understanding the series of relevant events; however we do not foresee the danger of a trial within a trial.

Defendants also argue that evidence regarding alleged attempts to poison Mr. Milan's dog would be unfairly prejudicial and cause the jury to base its decision on emotions rather than evidence. While Mr. Terrell's testimony is prejudicial to Defendants it also directly relevant to Plaintiff's claims of alleged discriminatory conduct by Defendants. If the jury chooses to believe evidence that the Defendants attempted to poison a disabled tenant's dog they will be basing its decision on relevant evidence regarding Defendants discriminatory animus towards disabled tenants and those that support them. We find that the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Accordingly, the following Order is hereby entered.

AND NOW, this _5th_ day of _April_ 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion in Limine to Preclude Testimony of Ed Cook Pursuant to Federal Rules of Evidence 602 and 403 (ECF No. 95) and Defendants' Motion in Limine to Preclude Testimony or Evidence Regarding Alleged Attempts to Poison Robert Milan's Dog (ECF No. 102), be and hereby are DENIED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Counsel of Record